IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Darrell L. Goss, | ) | C/A No.: 1:18-2124-BHH-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| | ) | |
| Richard Cothran, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Darrell L. Goss ("Plaintiff"), proceeding pro se and in forma pauperis, brings this action pursuant to 42 U.S.C. § 1983 alleging violation of his Eighth Amendment rights against Richard Cothran ("Defendant"), Warden of Turbeville Correctional Institution ("TCI"), in his individual capacity, for failure to protect Plaintiff from inmate assaults and the threat of inmate assaults due to increased gang violence. More specifically, Plaintiff alleges that during his 16-month incarceration at TCI, beginning September 8, 2016, Defendant failed to protect him from threats, extortion, and violence by prison gangs, particularly the Folk Nation, also known as "the Gs." All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2)(e) (D.S.C.).

Plaintiff originally filed this case on August 2, 2018, bringing claims in his complaint and amended complaint against over twenty-five defendants concerning prison violence occurring at multiple South Carolina correctional institutions. [*See, e.g.*, ECF No. 39 at 2]. Discovery has been elaborate and contentious. For example, Plaintiff originally sought discovery concerning gang violence at twelve different South Carolina correctional institutions. [*See, e.g.*, ECF No. 97 at 4]. In an April 4, 2019 order issued by the court, Plaintiff was allowed discovery concerning only those institutions where he has been housed, and, as relevant here, the court also limited discovery sought by Plaintiff concerning a specific riot at TCI that occurred on December 31, 2017, to "any incident reports or photos related to this riot that directly involved Plaintiff." *Id.* at 5.

On February 20, 2020, the undersigned issued a report and recommendation, recommending in part the district judge dismiss all of Plaintiff's claims except against Defendant for failure to protect him from prison violence in violation of his Eighth Amendment rights and deny Defendant's motion for summary judgment as to this claim. [ECF No. 191]. Following issuance of the report, Plaintiff filed a motion for extension of time to complete discovery, seeking information regarding four correctional officers who are potential witnesses in this case, a complete copy of the "monthly management information report" for the time he was incarcerated at TCI, a

copy of the incident report for the 2017 riot at the prison, and any and all incident reports from third responders during his time incarcerated at the prison. [ECF No. 200].

On September 28, 2020, the district judge adopted the report and recommendation, granted in part Plaintiff's motion for extension of time to complete discovery, and remanded the matter to the undersigned to determine the appropriate bounds and time limits for both parties to conduct additional, limited discovery regarding Plaintiff's sole remaining claim. [ECF No. 233 at 10 ("After review, the Court agrees with Plaintiff that some limited, additional discovery is necessary to ensure that the record is fully developed and that the parties can effectively prepare for trial . . . . if the parties' discovery exposes any information clearly critical to the outcome of this case, then the parties may move to file additional dispositive motions.")].

On September 29, 2020, limited discovery was reopened in this case. [ECF No. 235]. On November 16, 2020, Plaintiff filed his first motion to compel. [ECF No. 245]. In response, Defendant filed a motion for extension of time, noting the extensive amount of discovery involved in Plaintiff's discovery requests and that court resolution of certain discovery disputes would likely be needed. [ECF No. 246]. In response to the court's request,

3

Defendant additionally produced a copy of Plaintiff's outstanding discovery requests. [ECF Nos. 247, 249].[1]

On November 30, 2020, the court found as moot Plaintiff's motion to compel and granted in part and denied in part Defendant's motion for extension of time, directing Defendant to file all objections to Plaintiff's discovery requests and providing Plaintiff with time to respond. [ECF No. 250]. Thereafter, Plaintiff filed a second motion to compel [ECF No. 253], prior to Defendant's timely-filed objections [ECF No. 254]. Plaintiff then submitted his responses to Defendant's objections. [ECF Nos. 255, 262].[2]

Defendant objects to the following requests for production and all related interrogatories:

---

[1] Plaintiff argues the discovery requests produced by Defendant have been produced out of order and are incomplete. [ECF No. 261]. As submitted by Defendant, Plaintiff's first request for production was served on October 5, 2020, [ECF No. 249-2] and Plaintiff's first request for interrogatories was served on October 12, 2020, [ECF No. 249-1]. Plaintiff argues that Defendant failed to include Plaintiff's second request for production of documents, also submitted on October 12, 2020. [ECF No. 261]. On January 4, 2021, Plaintiff filed a motion for sanctions based on these allegations. [ECF No. 263]. Finding no reason to issue sanctions, Plaintiff's motion for sanctions is denied. Defendant has requested the court find Plaintiff's second motion to compel moot in that "Defendant will mail a finalized copy of all Discovery responses and production to the Plaintiff once the Court has determined the documents relevant to the Plaintiff's Argument and ordered Defendant to produce same." [ECF No. 258 at 1].

[2] In Plaintiff's first reply to Defendant's objection, Plaintiff states he did not receive a copy of Defendant's objections. [ECF No. 255]. In an abundance of caution, the court mailed a copy of Defendant's objections to Plaintiff, extending the deadline for his response. [*See* ECF Nos. 256, 259]. Plaintiff then submitted a second reply to Defendant's objections. [ECF No. 262].

4

RFP 1: Please produce SCDC's restricted "Use of Force" policy.

RFP 2: Please produce, any and all incident report from Turbeville riot that occurred on or about December 9, 2016, in the Taw Caw Unit, where an inmate assaulted a Correctional Officer by hitting him multiple times on the head with locks attached to an extension cord and then took the Officer's Security keys and unlocked all of the cell doors.

RFP 3: Please produce, any and all incident reports from the Turbeville riot that occurred on or about December 31, 2017, in the Taw Caw Unit, where inmates took a Correctional Officer hostage. Locked him into a cell. Then took the officer's security keys and unlocked all of the cell doors.

RFP 4: Please produce, the monthly management information report (MIN) of Turbeville from January 2016 through January 2018.

RFP 5: Please produce, any and all use of force (whether planned or immediate) incident report (MIN) and/or video involving the use of Specialty Impact Munitions (SIM) that occurred at Turbeville from January, 2016 through January, 2018.

RFP 6: Please produce, any and all use of force (whether planned or immediate) incident report (MIN) and/or video involving the use of Chemical Munitions that occurred at Turbeville from January, 2016 through January, 2018.

RFP 7: Please produce, any and all use of force (whether planned or immediate) incident report (MIN) and/or video involving the use of Special Operations Response Team (SORT) and/or the Rapid Response Team (RRT) Crowd control) that occurred at Turbeville from January, 2016 through January, 2018.

[*See* ECF No. 249-1 (Plaintiff's IROGs), ECF No. 249-2 (Plaintiff's RFPs), ECF No. 254 (Defendant's objections), ECF No. 255 (Plaintiff's response), ECF No. 262 (Plaintiff's second response)].

Plaintiff's RFP 1 seeks the SCDC's restricted "Use of Force" policy. Defendant objects to this request because Plaintiff has access to the non-restricted policies, certain policies are designated restricted upon grounds of institutional safety and security from dissemination to non-staff, and on the grounds of relevancy in that "there are no force issues in the current litigation as framed by the pleadings and orders of this Court." [ECF No. 254 at 4]. Plaintiff does not address Defendant's objections. The court finds Defendant need not respond to Plaintiff's request concerning the SCDC's restricted "Use of Force" policy.

Plaintiff's RFP 2 concerns an alleged riot that occurred on December 9, 2016 at TCI. As stated by Defendant:

> There are no records of a major inmate disturbance with resulting inmate or staff injury for Dec 9, 2016. A minor incident did occur on Taw Caw A on December 9, 2016 in which several inmates jammed the locks on their cells and were able to open their doors and run around. There are no reports of any inmates or officers harmed during or prior to this incident. Only two inmates were restrained and handcuffed for refusing to return to their cells, other inmates had returned to their appropriate cells when first and second responders entered the unit. There is no indication that Inmate Goss #305517 was on this unit at the time of the incident, as his bed history places him on Taw Caw B in bed 268B. This Court's previous Order limits the requests to any incident reports or photos related to [riots] that directly involve Plaintiff. (ECF no. 97, page 5). Under the Court's Order, (ECF no. 97), production is to be made only if the events directly relate to Inmate Goss. The requested production cannot be located as the event did not occur as described. Further, the only other event of that day involved no injuries, did not involve Goss and was not on his housing unit wing.

[ECF No. 254 at 5]. In response, Plaintiff does not argue he was involved in this incident, but instead maintains that a correctional officer was injured, seeks the name of that officer, and submits an affidavit from the unit manager for the Taw Caw dorm stating the riot that occurred resulted in extensive destruction of infrastructure and a lockdown that lasted a period of weeks. [*See* ECF No. 262 at 3–5, *see also* ECF No. 262-1].[3]

Defendant is directed to produce discovery responsive to Plaintiff's RFP 2 to the extent the incidents that occurred on or about this day concerned gang activity at TCI. The April 4, 2019 order referenced by Defendant did not address incidents occurring on December 9, 2016, although it did address the December 31, 2017 riot, as discussed more below. [*See* ECF No. 97 at 5]. Additionally, although Plaintiff may not have been located on the relevant unit on the day in question, information concerning gang activity on or about this day at TCI is relevant to Plaintiff's Eighth Amendment claim.[4]

---

[3] Plaintiff requests the court return the unit manager's affidavit "because it's his only original copy." [ECF No. 262 at 3 n.1]. The clerk of the court is instructed to return this document to Plaintiff, as further directed below.

[4] The Eighth Amendment imposes a duty on prison officials "to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (internal quotation marks omitted). To establish a claim under the Eighth Amendment, a prisoner must satisfy two elements. "First, the deprivation alleged must be, objectively, 'sufficiently serious.'" *Id.* at 834 (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Second, a prisoner must present evidence that the prison officials had a "'sufficiently culpable state of mind.'" *Id.* (citing *Wilson*, 501 U.S. at 297). A prison official's

Plaintiff's RFP 3 concerns a riot that occurred at TCI on December 31, 2017. Defendant objects as follows:

> This December 31, 2017, Inmate Disturbance incident is one of the cases involving an inmate death revealed in DEFENDANT'S ANSWERS TO PLAINTIFF'S COURT ORDERED REQUEST FOR PRODUCTION wherein responses were provided to Plaintiff and the responses and attachments were provided for in camera review to United States Magistrate Judge Mary Gordon Baker on June 25, 2019. The Court has previously reviewed the December 31, 2017 Incident Records of Turbeville Taw Caw B and it was established that they do not contain any information pertaining to the Plaintiff, Inmate Darrell Goss #305517 and would not be provided for his review. See, Affidavits of Service, (EFC no. 114 and 115).
>
> These documents were and are objected to on several grounds to include that production is protected as an on-going criminal prosecution and not relevant as Goss was not involved. On December 31, 2017, a major inmate disturbance occurred on Taw Caw Unit, B-Side. An inmate was killed in inmate-on-inmate violence and prosecutions of those participating in the disturbance are pending.
>
> This Court's previous Order frames the window May 2016 through January 2018 for Turbeville, denies the right to production of confidential information (ECF no. 97, page 6),[5] and

---

subjective actual knowledge can be proven through circumstantial evidence, for example, that the "substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus 'must have known' about it." *Id.* at 842; *see also, e.g., Makdessi v. Fields*, 789 F.3d 126 (4th Cir. 2015).

[5] Although the court previously denied Plaintiff's request for "all records" related to inmates who have been criminally charged in connection to inmate-on-inmate stabbings and inmate-on-staff stabbings as confidential in that "Plaintiff has not established why he needs the records of other inmates," [ECF No. 97 at 6–7], it does not appear that the incident reports currently

> further limits the requests to any incident reports or photos related to [riots] that directly involve Plaintiff." (ECF no. 97, page 5). Under the Court's Order, (ECF no. 97), production is to be made only if the events directly relate to Inmate Goss. They do not. According to the inmate bed summary, Inmate Goss was in Taw Caw A side from 12-14-17 until his transfer 1-16-18 and not involved in this incident. Inmate Darrell Goss' name is never mentioned in the Police Services reports, SLED reports or Incident reports relating to this incident, nor does SCDC's file contain photos of Inmate Goss #305517. Further, Goss' medical treatment records in the affidavits before this Court demonstrate that Inmate Goss neither complained of nor was, he treated for any injuries after this date at Turbeville Correctional Institution.

[ECF No. 254 at 2, 5–6]. Plaintiff responds that he is entitled to these records because "he was injured during this riot (i.e., stabbed and beaten) as alleged throughout his pleadings" and "in order to prove that the risk of harm was obvious to Warden Cothran due to the ongoing violence/riots at Tuberville." [*See* ECF No. 262 at 5].

As noted by Defendant, the court has previously addressed Plaintiff's discovery requests concerning the December 31, 2017 riot, stating "the Court limits [discovery to be produced by Defendant] to any incident reports or photos related to this riot that directly involve the Plaintiff." [ECF No. 97 at 5]. However, the multiple claims, defendants, and discovery requests before the court when that order was issued is significantly different from the one claim, one defendant, and more limited discovery requests at issue now.

---

sought contain this type of confidential information. To the extent these reports do, as stated above, these reports are to be redacted.

Because of the unusual procedural posture of this case and the limited reopening of discovery directed by the district judge, the undersigned directs Defendant to produce discovery responsive to Plaintiff's RFP 3 for the same reasons articulated above concerning Plaintiff's RFP 2, all redacted as necessary. Plaintiff's sole remaining claim concerns his allegation that Defendant failed to protect him from prison violence while he was housed at TCI, and, as stated above, a prison official's subjective actual knowledge can be proven through circumstantial evidence, for example, that the "substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus 'must have known' about it." *Farmer*, 511 U.S. at 842.

Plaintiff's RFP 4 seeks management information note systems ("MINS") reports for TCI from January 2016 through January 2018. The undersigned agrees with Defendant that this request is overly broad and seeks irrelevant information, but disagrees that the only relevant information are the MINS reports that directly concern Plaintiff or the unit he was housed in, for the reasons stated above. [*See* ECF No. 254 at 6–7].[6]

---

[6] Although Plaintiff argues that "the MINS reports does not detail incidents regarding other inmates or their personal information," [ECF No. 262 at 6],

Defendant is directed to produce, in response to this RFP, MINS reports directly involving Plaintiff and the unit where he was housed in addition to those MINS reports that concern gang activity at TCI, with redactions as needed, from the time period of May 2016, four months prior to the time Plaintiff arrived at TCI, through January 2018, when Plaintiff was transferred to a different institution, to the extent this discovery has not already been produced.[7]

Plaintiff, in his RFPs 5–7, seeks TCI's MINS reports and video evidence regarding the use of force, the use of specialty impact munitions, the use of chemical munitions, the use of special operations response teams, and the use of rapid response teams, from January 2016 through January 2018. Plaintiff "contends that he is aware of at least seven (7) riots that occurred at Tuberville during the timeframe that he was there w[h]ere the Special

---

Defendant notes that by "requesting all Management Information Note System reports for . . . the period of January 2016 through January 2018, there are implicated thousands of pages of MINS Reports, which, if allowed, detail incidents regarding other inmates and would need to be redacted for classified or protected information regarding other inmates, HIPAA and other protected information by Counsel," rendering Plaintiff's request unduly burdensome. [ECF No. 254 at 6].

[7] The court has previously held Plaintiff entitled to documents "where Plaintiff was actually housed, during the time periods he was housed there, including four months prior to the time he arrived at these Institutions." [ECF No. 97 at 5–6 (emphasis removed)]. Plaintiff makes no argument as to why this time frame is currently insufficient.

11

Operations Response Team (SORT) and/or the Rapid Response Team (RRT) was activated." [ECF No. 262 at 8].

The undersigned agrees with Defendant that these RFPs are overly broad, unduly burdensome, and seek irrelevant information. [*See, e.g.*, ECF No. 254 at 7–8 ("there is no search mechanisms in the SCDC database to isolate the particular type of force requested, each use of force would have to be identified from the MINS, pulled from the institution and investigation for the type of force used.")]. Additionally, these RFPs significantly overlap with the information requested by Plaintiff in his RFP 4. For these reasons, the court finds Defendant need not respond to Plaintiff's RFPs 5–7.

Plaintiff's second motion to compel is denied as moot. [ECF No. 253]. Plaintiff's motion for sanctions is denied. [ECF No. 263]. The clerk of court is directed to return by mail the supporting documents provided to the court by Plaintiff found at ECF No. 262-1. As previously ordered by this court, Defendant's responses to the discovery requests in compliance with this order are due by January 15, 2021. The parties shall conduct depositions of Plaintiff and his two witnesses by February 22, 2021. Dispositive motions are due by March 26, 2021.

IT IS SO ORDERED.

January 5, 2021                                    Shiva V. Hodges
Columbia, South Carolina                     United States Magistrate Judge